UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE NO. 21-60064-CR-RKA

**UNITED STATES OF AMERICA**

vs.

**JOSHUA BELLAMY,**

    **Defendant.**
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, hereby submits this Sentencing Memorandum as to Defendant Joshua Bellamy (the "Defendant"). The Defendant is presently set for sentencing before the Court on September 22, 2021 for his conviction by guilty plea to one count of conspiracy to commit wire fraud, in violation of Title 18, United State Code, Section 371. The offense stems from the Defendant's application for a fraudulent Paycheck Protection Program ("PPP") loan of $1,246,565 on behalf of his company, Drip Entertainment LLC ("Drip Entertainment"), and $1,648,413 in fraudulent loans sought through other conspirators that the Defendant referred to the scheme, for a total intended loss of $2,894,978.

For the reasons set forth herein, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of 37 months, to be followed by three years of supervised release.[1] A sentence of 37 months' imprisonment represents the bottom of the applicable range of the United States Sentencing Guidelines (the "Guidelines") as calculated by

---

[1] The United States is also seeking forfeiture of $1,246,565 and restitution of $1,246,565. The Defendant has also agreed to pay a special assessment of $100 [ECF No. 32 ¶ 5].

the United States Probation Office ("Probation") in the Presentence Investigation Report, disclosed September 15, 2021 [ECF No. 45] (the "PSR"), to which the government has no objection. Furthermore, the sentence recommended herein by the United States will provide punishment for the offense of conviction that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

I. **FACTUAL BACKGROUND**

In early 2020, as the COVID-19 pandemic spread across the country and disrupted everyday life, causing illness, death and economic distress, the U.S. government assembled relief programs to help those whose livelihoods were jeopardized. One of those programs was the PPP. Against this backdrop, the Defendant and his co-conspirators participated in a scheme to obtain by fraud millions of dollars in forgivable loans through the PPP, and have done so by conspiring with James Stote (referenced as "Individual 1" in the Information), Wyleia Williams, and others. The Defendant obtained a fraudulent PPP loan for his own company, Drip Entertainment, with James Stote and Wyleia Williams providing falsified documents and submitting the application on the Defendant's behalf in exchange for a kickback from the loan proceeds. To inflate the size of these PPP loans, and the corresponding kickbacks, the conspirators relied on a variety of false statements, including by submitting falsified bank statements and payroll tax forms.

A. **The CARES Act**

In March 2020, in response to the many challenges presented by the pandemic, Congress passed the CARES ACT, Pub. L. 116-136, which created the PPP. The PPP authorized $349 billion in forgivable loans to small businesses to be used for payroll, mortgage interest, rent/lease payments, or utilities. In April 2020, Congress authorized an additional $310 billion for PPP

funding. These funds were designed to address the unprecedented crisis facing Americans—especially business owners whose livelihoods were threatened by the public health emergency. PPP funds were designed as a lifeline.

The program was designed to provide funds quickly and easily to qualifying individuals. PPP loans were not dispensed through any government bureaucracy; funds were distributed by banks who had existing relationships with many of the people in need. To apply, individuals submitted an application to a participating financial institution along with supporting documentation as to the business's payroll expenses. The supporting documentation requirement was minimal and could be satisfied with one years' worth of the company's tax records. If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration ("SBA").

**B.  Overview of Defendant's Conduct**

A more detailed recitation of the facts relating to the scheme are detailed in the Information (ECF No. 20), Defendant's factual proffer statement (ECF No. 31), and the PSR (ECF No. 45).

Beginning in May 2020 through in or around at least August 3, 2020, the Defendant conspired with James Stote, Wyleia Williams, and others to obtain by fraud a PPP loan on behalf of Drip Entertainment, a Florida limited liability company that the Defendant founded.

In furtherance of the conspiracy, the Defendant caused the submission of a PPP loan application on behalf of Drip Entertainment that the Defendant knew contained materially false and fraudulent representations, including both the number of employees that Drip Entertainment had during each quarter of 2019 and the amount of wages paid by Drip Entertainment during each quarter of 2019. Specifically, between May 14 and May 27, 2020, Stote and Williams, in

3

coordination with Defendant and at Defendant's request, electronically submitted a PPP loan application form on behalf of Drip Entertainment, which falsely represented to Bank 1 that Drip Entertainment had 47 employees and an average monthly payroll of $498,626.

Bank Processor 1 approved a PPP loan for Drip Entertainment, which Bank 1 funded in the amount of $1,246,565. The Defendant then proceeded to spend those funds, which were supposed to go to payroll and other specified authorized expenses, on personal items, including luxury items such as jewelry, and charges at the Seminole Hard Rock Hotel and Casino. The Defendant also wired approximately $311,641.67 to Stote as a kickback for his assistance in preparing and submitting the fraudulent Drip Entertainment loan.

In addition to obtaining a fraudulent PPP loan for his own company, the Defendant recruited friends and associates, whom he referred to Stote for the purpose of submitting additional fraudulent PPP loan applications. The Defendant is directly responsible for two fraudulent loans seeking approximately $1,648,413 that came from his referrals. The Defendant is therefore responsible for a total intended loss of $2,894,978, which includes the $1,246,565 Drip Entertainment loan and the $1,648,413 in fraudulent loans sought through his referrals.

## II.    PROCEDURAL HISTORY

On September 9, 2020, the Defendant was charged by complaint with conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349, wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344 [ECF No. 1]. Following waiver of indictment, on February 25, 2021, the Defendant was charged in an Information with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371 [ECF No. 20]. The Defendant pleaded guilty

4

before the Honorable Patrick M. Hunt to the Information pursuant to a written plea agreement on June 9, 2021 [ECF No. 31]. Sentencing is presently scheduled for September 22, 2021.

### III. SENTENCING GUIDELINES CALCULATIONS

As explained below, the United States submits that the Defendant's Total Offense Level is 21. At Criminal History Category I, this produces an advisory Guidelines range of 37-46 months of imprisonment pursuant to the Sentencing Table in Chapter 5, Part A of the Guidelines.

### A. The PSR Correctly Computes the Offense Level

As set forth in the PSR, Probation computes the Total Offense Level at 21 (PSR ¶¶ 41-51). The United States concurs with the Offense Level computation in the PSR, which is as follows:

| | |
|---|---|
| Base Offense Level, § 2B1.1(a)(2) | 6 |
| Loss greater than $1,500,000 but less than $3,500,000, § 2B1.1(b)(1)(I) | 16 |
| Deriving more than $1,000,000 in gross receipts from one or more financial institutions, § 2B1.1(b)(17)(A) | 2 |
| Acceptance of Responsibility and Timely Notification § 3E1.1(a) and (b) | (3) |
| **Total Offense Level** | **21** |

The Defendant does not dispute that these Guidelines provisions are applicable to him. Rather, the Defendant seeks a downward variance based primarily on his personal history and characteristics, his role in the offense, and his cooperation with the Government's investigation. [ECF No. 46]. As further described below, the Defendant is not entitled to a downward variance.

**IV.     CONSIDERATION OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)**

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court shall consider in sentencing a defendant. As addressed in turn below, the 3553(a) factors relevant to the Defendant support the sentence recommended by the United States and do not support a downward variance.

**A.     Nature and Circumstances of the Offense**

This was a serious offense. In 2020, as the COVID-19 pandemic spread across the country causing illness, death and economic distress, the government created PPP loans to help small business owners and their employees whose livelihoods were jeopardized. The Defendant took advantage of the program by causing the submission of a false application claiming to have employees and payroll that did not exist. His application was supported by false tax forms and a fictitious bank statement. So too were the fraudulent loan applications that were submitted after the Defendant referred other conspirators to the scheme. The Defendant's willful participation in this serious criminal conduct warrants a sentence of imprisonment within the advisory Guidelines range. The United States' recommended sentence of 37 months' imprisonment, which is at the bottom of the Guidelines range, is sufficient but not greater than necessary to accomplish this goal.

The Defendant's role in the offense to which he has accepted responsibility and pleaded guilty does not warrant a downward variance. The Defendant is being sentenced for participating in a conspiracy to defraud the PPP program in which the Defendant caused the submission of a fraudulent PPP loan application for his own company and in which the Defendant referred other conspirators to the scheme. His role in that offense is not minor. Rather, the Defendant was an important participant in the relevant conduct for which he is being held accountable. The

6

Defendant was the one who sought the proceeds of the fraudulent loan for his company. While Stote, Augustin, and others working with them orchestrated and carried out the scheme, the Defendant ultimately is the person who said yes to the fraud that his co-conspirators were offering. The Defendant is the one who took in over $1.2 million in PPP loan proceeds—the largest single PPP loan obtained within this conspiracy of over 90 PPP loans—and who quickly spent those proceeds in just a few months' time on extravagant personal expenses as well as paying kickbacks to his co-conspirator. And the Defendant is the one who took further steps by recruiting other conspirators to the scheme in the expectation of receiving kickbacks on their fraudulent loans. Without the Defendant and others like him bringing additional conspirators to the table in rapid succession, this scheme could not have ballooned into over 90 fraudulent applications and over $34 million in loans in just a few weeks' time. Put differently, but for the Defendant's role in the offense, the Defendant's fraudulent PPP loan would not have existed, and it is highly unlikely that the fraudulent loans that he referred to the scheme would have existed. It is those loans for which he is being held responsible, and not the larger total of more than approximately $34 million in intended loss based on the entire scheme.

There is no dispute that other conspirators, including Stote and Augustin, played leading roles in the scheme. But the facts also establish that the Defendant himself played a central role in the fraudulent PPP loans for which he is being held accountable, and therefore a downward variance is not appropriate.

    **B.**    **History and Characteristics of the Defendant**

The Defendant is a 32-year-old man who was the founder of Drip Entertainment [ECF No. 45 (PSR) ¶ 23]. He has no criminal history points. He was a professional football player from

2012 through 2019, playing for several organizations in the National Football League, for which he earned significant income in the millions of dollars. [PSR ¶¶ 85, 90.]

The Defendant has faced a variety of personal challenges throughout his life as detailed by his sentencing memorandum. Those hardships provide context for how he got to this point in life. That said, the Defendant fails to recognize that he is ultimately the person responsible for his own conduct. Financial literacy is not required to know right from wrong. A lack of education does not excuse pure greed. Indeed, despite his claims of familial obligations and financial hardship, the fact remains that the Defendant spent large amounts of the money he obtained from his fraudulent PPP loan on personal indulgence. The Defendant's conduct cannot simply be explained away as the product of the Defendant's personal circumstances; what he did was an inexcusable display of selfishness and avarice in the midst of a national tragedy.

The Defendant agreed to plead guilty before being indicted, and thus deserves credit for accepting responsibility early and saving the government considerable resources in preparing for trial. The sentence recommended by the United States reflects such acceptance because it is within the Guidelines produced by the Offense Level that has been adjusted downward by three levels for acceptance of responsibility pursuant to Section 3E1.1(a) and (b).

However, the Government disagrees with the Defendant's claim that he provided truthful, "full and complete cooperation" with its investigation. [ECF No. 46 at 17]. Although the Defendant agreed to promptly meet with investigators and consented to a search of his phone, the Government did not evaluate his statements during his interview to be fully truthful and complete. The Defendant offered a misleading, incomplete, and untruthful version of a call he had with an individual that, unbeknownst to the Defendant, was an undercover law enforcement agent who

recorded the call. The Defendant met with the Government in the apparent hope of convincing law enforcement that he did nothing wrong. If the Government accepted the Defendant's version of events as he portrayed them during his interview – during which he declined to accept his own wrongdoing – it is unlikely that he would have been charged with the offenses for which he ultimately pleaded guilty. But that is obviously not how this story ended. The Defendant's cooperation with the Government does not qualify as substantial assistance that warrants a downward variance.

### C. Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant

The sentence in this case should address a need for both general and specific deterrence. As to general deterrence, the Eleventh Circuit has explicitly stated that "general deterrence is an important factor in white-collar cases, where the motivation is greed." *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014). As explained above, this case was motivated by greed at a time when millions of Americans were suffering from the economic impact of a global pandemic. As the pandemic spread, so too did fraud related to the PPP program and other programs designed to provide critical economic assistance—especially in the Southern District of Florida. The Government's recommended sentence of imprisonment in this case is thus appropriate to provide both specific and general deterrence. Such a sentence will send a clear message to the Defendant and other offenders that there are serious consequences for defrauding government pandemic relief programs. Indeed, as the pandemic continues to impact small businesses, the PPP loan program remains ongoing. Actors like the Defendant who seek to defraud these programs not only drain the program of limited funding, they make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it. The Defendant's

sentence will serve as a warning and deterrent to others inclined to exploit pandemic relief programs.

Furthermore, a sentence at the bottom of the Guidelines range is sufficient to protect the public from future crimes of this Defendant who has no prior convictions. With this sentence, the Government believes the risk of recidivism is low.

### D. Need for the Sentence to Avoid Unwarranted Sentencing Disparities

The sentence recommended by the United States will not create an unwarranted sentencing disparity. There are two relevant points of comparison to avoid unwarranted sentencing disparities: sentences associated with others convicted of PPP related fraud, and the sentences of co-conspirators in this case. While a relatively small number of defendants have been sentenced to date for offenses related to PPP fraud, judges of this Court and of other Districts have imposed sentences with significant terms of imprisonment. *See, e.g.*, *United States v. Ioannis Kralievits*, Case No. 21-20157-CR-Altonaga (S.D. Fla. June 30, 2021) (sentencing cooperating defendant to 19-month term of imprisonment (following reduction pursuant to 5K1.1) in connection with two fraudulent PPP loans totaling approximately $824,750); *United States v. David Hines*, Case No. 21-20011-CR-Cooke (S.D. Fla. May 12, 2021) (imposing 78-month term of imprisonment for defendant responsible for a loss of $3.9 million resulting from multiple fraudulent PPP loans); *United States v. Ganell Tubbs*, 20-00193-CR-Miller (E.D. Ark.) (imposing 41-month term of imprisonment for defendant responsible for loss of $1.9 million resulting from two fraudulent PPP loans).

The Defendant will be the fourth of the conspirators in this scheme to be sentenced. On July 13, 2021, the court sentenced co-conspirator Tiara Walker to one year and one day, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v.*

*Walker*, Case No. 20-cr-60159-RAR (S.D. Fla., July 13, 2021).  On July 27, 2021, co-conspirator Tonye Johnson was sentenced by this Court to 18 months in prison, three years of supervised release, and ordered him to pay restitution and forfeiture.  *United States v. Johnson*, Case No. 21-CR-60017-RKA (S.D. Fla.).  Both defendants Walker and Johnson only sought fraudulent PPP loans for their own companies, for less than $500,000 each, and did not refer others to the scheme.  Both defendants Walker and Johnson had no criminal history points.[2]  On July 30, 2021, the court sentenced Andre Clark to 33 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture.  *United States v. Clark*, Case No. 21-CR-60029 (S.D. Fla.).  Defendant Clark sought his own fraudulent PPP loan and also referred other conspirators to the scheme, and he did so with a significant criminal history.[3]  In contrast to Defendant Bellamy, however, Clark received a smaller PPP loan ($488,565) that was frozen by the bank before he could spend the proceeds.

The intended loss amount of $2,894,978 attributable to the Defendant is an important measure of his relative culpability as compared to co-conspirators in a scheme involving over 90 fraudulent loan applications and over $34 million in intended losses.  That is, the co-conspirators who led and organized the scheme and were involved in preparing or submitting even more fraudulent loan applications will be responsible for a greater intended loss amounts, and a correspondingly higher advisory Guidelines range under Section 2B1.1.  A sentence of 37 months for this Defendant, who is being held responsible only for the loss associated with his fraudulent

---

[2] Notably, however, defendant Johnson tested positive for marijuana during the presentence investigation and attempted to conceal his marijuana use from Probation by using a device to provide urine from someone other than the test taker.

[3] Based primarily on his referrals, Clark's loss amount for sentencing purposes was between $3,500,000 and $9,500,000.  However, unlike Defendant Bellamy, Clark ultimately received little money from the scheme, which the sentencing court found to be a significant factor at sentencing.

loan and those he directly referred to the scheme, will provide a consistent framework for future sentences of co-conspirators in this conspiracy whose Guidelines correlate to the losses for which they are directly responsible.

## V. RESTITUTION & FORFEITURE

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A(a)(1). As set forth in the Plea Agreement [ECF No. 32 ¶ 17], the United States and the Defendant have agreed that the Defendant owes restitution. The United States is seeking restitution in the amount of $1,246,565. Restitution is owed joint and severally with the Defendant's co-conspirators charged in at least the following related case: *United States v. Stote*, 20-4215-MJ-Greenberg (N.D. Ohio); *United States v. Augustin*, 20-mj-02207-DAR (N.D. Ohio); *United States v. Williams*, 20-mj-02208-DAR (N.D. Ohio).

Furthermore, pursuant to the Plea Agreement, the Defendant agreed to forfeiture. The United States is seeking a money judgment in the amount of $1,246,565. [ECF No. 32 ¶ 13]. On August 26, 2021, the Court entered a preliminary order of forfeiture in which the Court entered a forfeiture money judgment of $1,246,565 [ECF No. 44].

\* \* \*

## CONCLUSION

For the forgoing reasons, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of thirty-seven (37) months, to be followed by a term of supervised release of three (3) years. The United States also requests that the Court order restitution, forfeiture, and a special assessment, consistent with the Plea Agreement [ECF No. 32] and the point and authorities discussed herein.

Respectfully Submitted,

| | |
|---|---|
| JUAN ANTONIO GONZALEZ<br>ACTING UNITED STATES ATTORNEY | JOSEPH S. BEEMSTERBOER<br>ACTING CHIEF, FRAUD SECTION |
| By: /s/ *David S. Turken*<br>DAVID TURKEN<br>Assistant United States Attorney<br>Florida Bar No. 28573<br>99 NE 4TH Street<br>Miami, FL 33132-2111<br>Tel.: (305) 961-9430<br>Fax: (305) 530-7976<br>Email: david.turken@usdoj.gov | By: /s/ *Philip B. Trout*<br>PHILIP B. TROUT<br>Trial Attorney, Fraud Section<br>U.S. Department of Justice<br>1400 New York Ave NW<br>Washington, DC 20530<br>Tel: (202) 616-6989<br>Fax: (202) 514-3708<br>Email: philip.trout@usdoj.gov |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 18, 2021, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

*/s/ Philip Trout*
Trial Attorney
